**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLNOIS**
**WESTERN DIVISION**

| | | |
|---|---|---|
| ESSEX INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO.: |
| | ) | |
| HOUSECALL PHYSICIANS OF | ) | |
| ILLINOIS, S.C. d/b/a MD@HOME; | ) | |
| CHARLES DEHAAN; THELMA YOUNG; | ) | |
| RAQUEL BROWN; JUDITH KOHL; | ) | |
| DEBORAH CURTIS; GERTRUDE | ) | |
| GLASPIE; DEBRA LINGELBACH; | ) | |
| BRENDA NELSON; and SUSAN | ) | |
| BEESELY, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT AND JURY DEMAND

NOW COMES Plaintiff, ESSEX INSURANCE COMPANY, by its attorneys, COZEN O'CONNOR, and for its Complaint for Declaratory Judgment against the Defendants, HOUSECALL PHYSICIANS OF ILLINOIS, S.C. D/B/A MD@HOME, CHARLES DEHAAN, THELMA YOUNG, RAQUEL BROWN, JUDITH KOHL, DEBORAH CURTIS, GERTRUDE GLASPIE, DEBRA LINGELBACH, BRENDA NELSON and SUSAN BEESELY, states as follows:

### Parties

1.     Plaintiff, Essex Insurance Company ("Essex"), is a Delaware corporation with its principal place of business in Glen Allen, Virginia.

2.     Defendant, Charles Dehaan is a resident and citizen of Illinois.

3.     Defendant, Housecall Physicians of Illinois, S.C. d/b/a MD@Home, is an Illinois Service Corporation with its principal place of business in Chicago, Illinois.  Defendant, Housecall

Physicians of Illinois, S.C. d/b/a MD@Home, is a citizen of Illinois. As described below, Housecall Physicians of Illinois, S.C. d/b/a MD@Home is listed as the Coverage B Named Insured on the Essex Policy and is a defendant in the *Young, Brown, Kohl, Curtis, Glaspie, Lingelbach, Nelson,* and *Beesely* Lawsuits described in further detail below.

4.        Defendant, Thelma Young, is an underlying tort plaintiff and is a resident and citizen of Illinois. She is named solely as a party who may have an interest in the outcome of this dispute.

5.        Defendant, Raquel Brown, is an underlying tort plaintiff and is a resident and citizen of Illinois. She is named solely as a party who may have an interest in the outcome of this dispute.

6.        Defendant, Judith Kohl, is an underlying tort plaintiff and is a resident and citizen of Illinois. She is named solely as a party who may have an interest in the outcome of this dispute.

7.        Defendant, Deborah Curtis, is an underlying tort plaintiff and is a resident and citizen of Illinois. She is named solely as a party who may have an interest in the outcome of this dispute.

8.        Defendant, Gertrude Glaspie, is an underlying tort plaintiff and is a resident and citizen of Illinois. She is named solely as a party who may have an interest in the outcome of this dispute.

9.        Defendant, Debra Lingelbach, is an underlying tort plaintiff and is a resident and citizen of Illinois. She is named solely as a party who may have an interest in the outcome of this dispute.

10. Defendant, Brenda Nelson, is an underlying tort plaintiff and is a resident and citizen of Illinois. She is named solely as a party who may have an interest in the outcome of this dispute.

11. Defendant, Susan Beesely, is an underlying tort plaintiff and is a resident and citizen of Illinois. She is named solely as a party who may have an interest in the outcome of this dispute.

## Jurisdiction and Venue

12. Jurisdiction is proper under 28 U.S.C. §1332(a)(1) since this is an action between citizens of different states and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

13. Jurisdiction is also proper under 28 USC §2201(a) because a case of actual controversy exists in connection with the parties' rights and obligations under a certain insurance policy issued by Essex to Housecall Physicians of Illinois, S.C d/b/a MD@Home and this Court has jurisdiction to declare the rights and legal obligations of any interested party seeking relief.

14. Venue is proper in this Court pursuant to 28 USC §1391(b)(1) because the Defendants reside in Illinois and in this judicial district. Venue is also proper under 28 USC §1391(b)(2) because a substantial part of the events and transactions giving rise to the claim occurred in this judicial district.

## Factual Background

### The 2014 Suspension of Dr. Dehaan by the Illinois Department of Financial and Professional Regulation Prior to Inception of the Essex Policy

15. Charles S. Dehaan was formerly a medical doctor whose license to practice medicine in the State of Illinois was suspended by the Department of Financial and Professional Regulation ("DFPR") on January 16, 2014 based upon a finding that the public's interest, safety

and welfare required emergency action to prevent his continued practice of medicine and absent revocation, Charles Dehaan's continued practice of medicine constituted an immediate danger to the public. Copies of the DFPR's January 2014 filings implementing the suspension of Dr. Dehaan are attached as Exhibit A.

16.     In the DFPR proceedings, it was asserted that Charles Dehaan sexually abused a 70 year old patient with the initials S.P. at the Rockford Supportive Living Center. Charles Dehaan was alleged to have rubbed S.P.'s breasts until she began to cry. In 2011, the Rockford Supportive Living Center administrator contacted the Rockford Police Department regarding this sexually inappropriate contact.

17.     In addition, in the DFPR proceedings, Charles Dehaan was alleged to have sexually abused a 69 year old woman with the initials S.L. during a home care visit at the Heritage Woods of Rockford. Charles Dehaan is alleged to have grabbed and rubbed S.L.'s breasts and buttocks, and exposed his erect penis to S.L. In 2011, the Heritage Woods of Rockford administrator contacted the Rockford Police Department regarding this sexually inappropriate contact.

18.     The DFPR also alleged that Charles Dehaan sexually abused a patient who had a history of mental illness. Charles Dehaan is alleged to have fondled M.H.'s breasts and engaged in sexual intercourse with M.H. Charles Dehaan is also alleged to have provided M.H. with several controlled substances, including Norco.

### The 2014 Lawsuits Filed Prior to Inception of the Essex Policy

19.     As described below, numerous civil lawsuits were brought in 2014 against Charles Dehaan as well as Housecall Physicians of Illinois, S.C.

20.     On August 8, 2014, a lawsuit titled *Susan Beesely v. Charles Dehaan*, Case No. 14 L 8363 was filed in the Cook County Circuit Court against Housecall Physicians of Illinois, S.C.,

Dehaan and others alleging sexual assault by Charles Dehaan against a patient. (the "*Beesely*" Lawsuit"). A copy of the currently operative complaint in the Beasley lawsuit is attached as Exhibit B.

21.     The *Beesely* Complaint alleges that from September 6, 2013 to "on or about September 21, 2013", defendant Charles Dehaan made visits to Ms. Beesely's home to provide in-home medical care and treatment.  During the course of these visits, Charles Dehaan allegedly committed sexual battery by offensive bodily contact with Ms. Beesely for his own sexual gratification without her consent.

22.     On August 26, 2014, a lawsuit titled *Brenda Nelson v. Charles Dehaan*, Case No. 14 L 8926 was filed in the Cook County Circuit Court against Housecall Physicians of Illinois, S.C. Dehaan and others alleging sexual assault by Charles Dehaan against a patient. (the "*Nelson* Lawsuit"). A copy of the currently operative complaint in the *Nelson* Lawsuit is attached as Exhibit C.

23.     The *Nelson* Complaint alleges that from September 12, 2013 to "on or about March 23, 2013", defendant Charles Dehaan made visits to Ms. Nelson's home to provide in-home medical care and treatment.  During the course of these visits, Charles Dehaan allegedly committed sexual battery by offensive bodily contact with Ms. Nelson for his own sexual gratification without her consent.

24.     On September 30, 2014, a lawsuit titled *Debra Lingelbach v. Charles Dehaan*, Case No.: 14 L 10217, was filed in the Cook County Circuit Court against Housecall Physicians of Illinois, S.C., Dehaan and others alleging sexual assault by Charles Dehaan against a patient. (The "*Lingelbach* Lawsuit"). A copy of the currently operative complaint in the *Lingelbach* Lawsuit is attached as Exhibit D.

25. The *Lingelbach* Complaint alleges that from March 2, 2013 to August 20, 2013, defendant Charles Dehaan made visits to Ms. Lingelbach's home to provide in-home medical care and treatment. During the course of these visits, Charles Dehaan allegedly committed sexual battery by offensive bodily contact with Ms. Lingelbach for his own sexual gratification without her consent.

26. On November 20, 2014, a lawsuit titled *Gertrude Glaspie v. Charles Dehaan*, Case No.: 14 L 12038 was filed in the Cook County Circuit Court against Housecall Physicians of Illinois, S.C., Dehaan and others alleging sexual assault by Charles Dehaan against a patient. (the "*Glaspie* Lawsuit") A copy of the currently operative compliant in the *Glaspie* Lawsuit is attached as Exhibit E)

27. The *Glaspie* Complaint alleges that from May 30, 2012 to January 16, 2014, defendant Charles Dehaan made visits to Ms. Glaspie's home to provide in-home medical care and treatment. During the course of these visits, Charles Dehaan allegedly committed sexual battery by offensive bodily contact with Ms. Glaspie for his own sexual gratification without her consent.

28. On November 26, 2014, a lawsuit titled *Deborah Curtis v. Charles Dehaan*, Case No. 14 L 12390 was filed in the Cook County Circuit Court against Housecall Physicians of Illinois, S.C., Dehaan and others alleging sexual assault by Charles Dehaan against a patient. (the "*Curtis* Lawsuit") A copy of the currently operative complaint in the *Curtis* lawsuit is attached as Exhibit F.

29. The *Curtis* Complaint alleges that from December 31, 2011 to November 15, 2013, defendant Charles Dehaan made visits to Ms. Curtis' home to provide in-home medical care and treatment. During the course of these visits, Charles Dehaan allegedly committed sexual battery by offensive bodily contact with Ms. Curtis for his own sexual gratification without her consent.

30.     On information and belief, on May 1, 2014, a sixth 2014 lawsuit, *Joan Shortridge v. Charles Dehaan MD, et al.*, was also filed in the Cook County Circuit Court against Housecall Physicians of Illinois, S.C., Dehaan and others alleging sexual assault by Charles Dehaan against a patient. Essex has to date not been provided with notice of this lawsuit.

**The 2015 Lawsuits Filed Against Dehaan**

31.     The filing of sexual assault lawsuits naming Charles Dehaan and Housecall Physicians continued in 2015, when the same plaintiff's attorney filed additional lawsuits as described more fully below.

32.     On June 1, 2015, Thelma Young filed a Complaint in the Circuit Court of Cook County, Illinois naming as defendants, Charles Dehaan and Housecall Physicians of Illinois, S.C. A copy of the *Young* Complaint, Case No. 15 L 5528, is attached as Exhibit G.

33.     The *Young* Complaint alleges that from November 2012 to January 2014, defendant Charles Dehaan made visits to Ms. Young's home to provide in-home medical care and treatment. During the course of these visits, Charles Dehaan allegedly committed sexual battery by offensive bodily contact with Ms. Young for his own sexual gratification without her consent.

34.     On August 20, 2015, Raquel Brown filed a Complaint in the Circuit Court of Cook County, Illinois, naming as defendants, Charles Dehaan and Housecall Physicians of Illinois, S.C. A copy of the *Brown* Complaint, Case No.: 15 L 8532, is attached as Exhibit H.

35.     The *Brown* Complaint alleges that from May 1, 2013 to August 31, 2013, defendant Charles Dehaan made visits to Ms. Brown's home to provide in-home medical care and treatment. During the course of these visits, Charles Dehaan allegedly committed sexual battery by offensive bodily contact with Ms. Brown for his own sexual gratification without her consent.

36.     On August 20, 2015, Judith Kohl filed a Complaint in the Circuit Court of Cook County, Illinois naming as defendants, Charles Dehaan and Housecall Physicians of Illinois, S.C. A copy of the operative *Kohl* Complaint, the First Amended Complaint, in Case No.: 15 L 8531, is attached as Exhibit I.

37.     The *Kohl* Complaint alleges that from "late 2013 to early 2014," defendant Charles Dehaan made visits to Ms. Kohl's home to provide in-home medical care and treatment. During the course of these visits, Charles Dehaan allegedly committed sexual battery by offensive bodily contact with Ms. Kohl for his own sexual gratification without her consent.

38.     In addition, prior to May 1, 2015, Charles Dehaan was charged with aggravated criminal sexual assault and aggravated criminal sexual abuse relating to incidents involving elderly patients and patients with physical and/or mental impairments.

39.     Housecall Physicians of Illinois, S.C. d/b/a MD@Home knew of the DPFR proceeding and the six 2014 lawsuits, and the allegations of sexual assault contained therein prior to being issued the Essex policy referenced below.

40.     In addition, Housecall Physicians of Illinois, S.C. d/b/a MD@Home knew prior to May 1, 2015 of the claims that Charles Dehaan had committed aggravated criminal sexual assault and aggravated criminal sexual abuse on multiple identified patients.

### The Essex Policy

41.     Essex issued a Locum Tenens and Contract Staffing Professional Liability Insurance Policy No. MM825507 to Housecall Physicians of Illinois, S.C. d//b/a MD@Home with a policy period of May 1, 2015 to May 1, 2016. (the "Essex Policy"). A copy of the Essex Policy is attached as Exhibit J.

42.     The Insuring Agreement in the Essex Policy states:

**INSURING AGREEMENT**

A.      **Professional Liability and Claims Made Clause**:  The Company shall pay on behalf of the Insured all sums in excess of the Deductible amount stated in the Declarations, which the Insured shall become legally obligated to pay as Damages as a result of Claims first made against the Insured during the Policy Period or during the Extended Reporting Period, if exercised, and reported to the Company pursuant to Section Claims A., Claim Reporting Provision:

1.      under Coverage A.   Individual Professional Liability: because of Malpractice or Professional Personal Injury, sustained by a patient and committed by the Coverage A. Insured, or by any person for whose Malpractice or Professional Personal injury the Coverage A. Insured is legally responsible, except as a member, stockholder or partner of an association, corporation, partnership or limited liability company, arising out of the conduct of the Insured's Medical Services;

2.      under Coverage B. Organization Liability: because of Malpractice or Professional Personal Injury, sustained by a patient and committed by any person for whom the Coverage B. Named Insured is legally responsible, arising out of the conduct of the Insured's Professional Healthcare Services;

provided:

a.      under Coverage A.  Individual Professional Liability:  that such Malpractice or Professional Personal Injury happens during the Policy Period or on or after the applicable Retroactive Date stated in the Declarations and before the end of the Policy Period; and

b.      under Coverage B.   Organization Liability:   that such Professional Healthcare Services or Professional Personal Injury happens during the Policy Period or on or after the applicable Retroactive Date stated in the Declarations and before the end of the Policy Period; and

c.      prior to the effective date of this policy the Coverage A. and Coverage B. Insureds had no knowledge of such Malpractice,   Professional   Healthcare   Services   or

Professional Personal Injury or any fact, circumstance, situation or incident which may lead a reasonable person in that Insured's position to conclude that a Claim was likely.

43.     The Essex Policy defines "Claim" as:

**B.** Claim means the Insured's receipt of:

1. a demand for monetary damages or services involving Professional Healthcare Services; or

2. the service of suit or arbitration proceedings against the Insured involving Professional Healthcare Services.

44.     The Essex Policy defines "Malpractice" as:

**G.     Malpractice** means an act, error or omission in Medical Services rendered or that should have been rendered.

45.     The Essex Policy defines "Professional Personal Injury" as:

**J.     Professional Personal Injury** means:

**1.**     any bodily injury, mental injury, sickness, disease, emotional distress or mental anguish, including death resulting therefrom of any patient, arising out of Malpractice;

**2.**     false arrest, detention or imprisonment, or malicious prosecution of any patient, except when inflicted by, at the direction of, or with the consent or acquiescence of the Insured who has predetermined to commit such act, or allowed such act to have been committed, without legal justification; or

**3.**     the publication or utterance of a libel or slander concerning a patient or a publication or an utterance in violation of a patient's right to professional confidence, except when published or uttered by, at the direction of, or with the consent or acquiescence of the Insured who has predetermined to commit such act, or allowed such act to have been committed, without legal justification.

46.    The Essex Policy defines "Professional Healthcare Services" as:

    **1.**    Medical Services; and
    **2.**    Placement Services

47.    The Essex Policy defines "Medical Services" as:

    **H.**    **Medical Services** means services, including but not limited to Telemedicine Services, provided in the medical care or treatment of any patient, but only where such care or treatment is within the scope of the Healthcare Provider's license, certificate or other qualification to practice Medical Services.

48.    The Essex Policy defines "Placement Services" as:

    **I.**    **Placement Services** means evaluating, selecting, hiring and contracting with Healthcare Providers to provide Medical Services for healthcare organizations; provided, however, Placement Services shall not include medical credentialing or managed care services.

49.    The Essex Policy contains an Endorsement captioned SCHEDULE OF COVERAGE A. NAMED INSURED which provides

**THIS ENDORSEMENT CHANGES THE POLICY.**
**PLEASE READ IT CAREFULLY.**

**SCHEDULE OF COVERAGE A. NAMED INSUREDS**

This endorsement modifies insurance provided under the following:

LOCUM TENENS AND CONTRACT STAFFING PROFESSIONAL LIABLITY INSURANCE COVERAGE PART

In consideration of the premium paid, it is hereby understood and agreed that Section The Insured A.1. is deleted and replaced with the following:

1.    the Coverage A. Named Insured which is herein defined as each individual stated in the Schedule below, but solely while acting on behalf of the Coverage B. Named Insured and within the scope of their duties, subject to the following:

    **a.**    as respects each such Named Individual(s). Item 6 of the Declarations, Retroactive Date, will be as stated for that Coverage A. Named Insured in the Schedule below; and

-11-

    **b.** each such individual shall be a Coverage A. Named Insured solely with respect to any Claim made against such individual on or after the Effective Coverage Date and prior to the Termination/Expiration Coverage Date, which dates are stated for that Coverage A. Named Insured in the Schedule below.

**Schedule**

| Named Individual | Retroactive Date | Effective | Coverage Date<br>Termination/Expiration |
|---|---|---|---|
| Brian Boe, M.D. | January 2, 2015 | Inception | End of Policy Period |
| Abel Ganbaldi, M.D. | January 16, 2015 | Inception | End of Policy Period |
| John F. Bartizal, Jr., M.D. | September 8, 2015 | Inception | End of Policy Period |
| Russell Martin Miller, MN.D. | August 1, 2015 | Inception | End of Policy Period |
| Peter A. Olusoji, M.D. | January 20, 2015 | Inception | End of Policy Period |
| Larry Mitchell, M.D. | | Inception | End of Policy Period |
| Kimberly Williams, M.D. | | Inception | End of Policy Period |
| Ronald Keller, P.A. | December 5, 2014 | Inception | End of Policy Period |
| Kenyatta Evans-Snulligan, N.P. | January 2, 2015 | Inception | End of Policy Period |
| Phillip Moreau, N.P. | February 16, 2015 | Inception | End of Policy Period |
| Sue Menschig, N.P. | February 16, 2015 | Inception | End of Policy Period |

50.    The Essex Policy contains an Endorsement captioned SEXUAL ACTS LIABILITY ENDORSEMENT, which provides:

**SEXUAL ACTS LIABLITY ENDORSEMENT**

This endorsement modifies insurance provided under the following:

**Locum Tenens and Contract Staffing Professional Liability Insurance Coverage Part**

In consideration of the premium paid, it is hereby understood and agreed that the Locum Tenens/Contract Staffing Services Professional Liability Insurance Coverage Part is amended as follows:

1.    Section Insuring Agreement is amended by the addition of the following:

    **B.**    **Sexual Acts Liability:** The Company shall pay on behalf of the Insured all sums in excess of the Deductible amount stated in Item

7 B. of the Declarations, which the Insured shall become legally obligated to pay as Damages as a result of Claims first made against the Insured during the Policy Period or during the Extended Reporting Period, if exercised, for Sexual Injury arising out of any Sexual Act perpetrated or alleged to have been perpetrated by the Insured or by any person for whose actions the Insured is legally responsible, or for allegations that the Insured was negligent in hiring, training or supervising any Insured person who perpetrated or is alleged to have perpetrated a Sexual Act resulting in Sexual Injury provided:

1.    such Sexual Act arises out of the conduct of the Insured's Professional Services;

2.    such Sexual Act is perpetrated or alleged to have been perpetrated during the Policy Period or on or after the Retroactive Date as stated in Item 8. of the Declarations and before the end of the Policy Period; and

3.    prior to the effective date of this policy the Insured had no knowledge of such Sexual Act or any fact, circumstance, situation or incident involving such Sexual Act which may result in a Claim under this policy.

2.    Section Definitions is amended by the addition of the following:

**N.**    **Sexual Act** means sexual abuse, sexual molestation or sexual exploitation arising out of the conduct of the Insured's Professional Services.

**O.**    **Sexual Injury** means bodily injury, sickness, disease, unlawful detention, false imprisonment, humiliation, emotional distress, mental anguish, sexual dysfunction, invasion of right of privacy, assault or battery, solely when arising out of a Sexual [sic].

3.    Section The Exclusions L. is deleted

4.    Section The Exclusions is amended by the addition of the following exclusions:

Y.    to any Insured who perpetrates or is alleged to have perpetrated a Sexual Act resulting in Sexual Injury; provided, however, the Company shall defend such Insured and pay Claim Expenses on their behalf unless it is established in fact that such Insured perpetrated such Sexual Act;

Z.   to any manager, supervisor, officer, director, trustee or partner who gains knowledge of any actual or alleged Sexual Act and fails to take reasonable care to prevent a future Sexual Act;

AA.  to any Claim based upon or arising out of any Sexual Act which is perpetrated or alleged to have been perpetrated by an Insured who previously perpetrated or is alleged to have previously perpetrated a Sexual Act, and after a manager, supervisor, officer, director, trustee or partner has gained knowledge of the previously perpetrated or previously alleged to have been perpetrated Sexual Act; or

BB.  to any Claim based upon or arising out of Sexual Injury to any employee of the Insured.

5.   Section Limits of Liability is amended by the addition of the following:

   **J.   Limit of Liability - Sexual Acts Liability Coverage:** The total liability of the Company for the combined total of Damages and Claim Expenses for all Claims insured herein because of Sexual Injury or allegations that the Insured was negligent in hiring, training or supervising any Insured person who perpetrated or is alleged to have perpetrated a Sexual Act resulting in Sexual Injury is limited to:

   1.   $ 1,000,000 All Claims Made by Each Claimant

   2.   $3,000,000 All Claims under Sexual Acts Liability Coverage

   Multiple Sexual Acts: Two or more Sexual Acts against one person shall be deemed to be one Sexual Act and shall be subject to the coverage and limits in effect at the time of the first Sexual Act.

6.   Section Limits of Liability 6. is amended by the addition of the following:

   Subject to Section Limits of Liability J., Limits of Liability - Sexual Acts Liability Coverage, the total liability of the Company for all Damages and Claim Expenses for all Claims insured herein because of Sexual Injury or allegations that the Insured was negligent in hiring, training or supervising any Insured person who perpetrated or is alleged to have perpetrated a Sexual Act resulting in Sexual Injury shall be part of and not in addition to the amount stated in Item 6. (b) (d) of the Declarations, Policy Aggregate Limit of Liability, arising out of all Claims first made against the Insured during the Policy Period and the Extend Reporting Period, if exercised.

51.     The Essex Policy contains the following Condition:

**I.      Multiple Insureds, Claims and Claimants:**

> **1.**     The inclusion herein of more than one Insured in any Claims or suits or the making of Claims or bringing of suit by more than one person or organization shall not operate to increase the Limits of Liability stated in the Declarations.  More than one Claim arising out of a single Malpractice, Professional Healthcare Service or Professional Personal Injury or a series of related Malpractices, Professional Healthcare Services or Professional Personal Injuries shall be considered a single Claim.  All such Claims, whenever made, shall be deemed to be first made on the date on which the earliest Claim arising out of such Malpractices, Professional Healthcare Services or Professional Personal Injury or a series of related Malpractices, Professional Healthcare Services or Professional Personal Injury is made or with regard to the notice given to and accepted by the Company pursuant to Section Claim B., Discovery Clause, on the date within the Policy Period on which such notice of potential Claim is first received by the Company.

## COUNT I

### (Claim Not First Made during the Essex Policy Period)

52.     Essex incorporates the allegations of Paragraphs 1-51 above as though fully set forth herein.

53.     Both the Essex Policy Insuring Agreement and the Sexual Acts Liability Endorsement quoted above respond only to "Claims" that are first made during the policy period of the Essex Policy, which here incepted on May 1, 2015.

54.     The Essex Policy provides that when multiple claims arise out of a series of related Malpractices, Professional Healthcare Services or Professional Personal Injuries, they are considered a single Claim and all such Claims whenever made are deemed to have been first made on the date the first Claim is made.

55.     The *Young, Brown, Kohl, Curtis, Glaspie, Lingelbach, Nelson*, and *Beesely* Lawsuits all are related Claims and under the Essex Policy are deemed a single Claim that was first made on August 8, 2014, when the *Beesely* Lawsuit was filed. Further, if the *Shortridge* case is considered, the date the Claim is deemed first made would be even earlier as it was filed May 1, 2014.

56.     Accordingly, there is no coverage under the Essex Policy for the *Young, Brown, Kohl, Curtis, Glaspie, Lingelbach, Nelson*, and *Beesely* Lawsuits because the Claim was not first made during the policy period of the Essex Policy.

## COUNT II

### (In the Alternative, No Coverage for the 2014 Lawsuits)

57.     Essex incorporates the allegations of Paragraphs 1-51 above as though fully set forth herein.

58.     In the alternative, if it were to be determined that all of the underlying sexual assault lawsuits are not related claims deemed to have been made as of the date of the first, the cases filed in 2014, Curtis, Glaspie, Lingelbach, Nelson, and Beesely, are not Claims first made during the policy period of the Essex Policy.

59.     Accordingly, there is no coverage under the Essex Policy for the *Curtis, Glaspie, Lingelbach, Nelson*, and *Beesely* Lawsuits.

## COUNT III

### (Dehaan not an Insured)

60.     Essex incorporates the allegations of Paragraphs 1-51 above as though fully set forth herein.

-16-

61.    Those Healthcare Providers that qualify as Insureds are listed on the endorsement titled "Schedule of Coverage A Named Insureds" quoted above.

62.    Charles Dehaan is not scheduled as an individual insured.

63.    Accordingly, as Charles Dehaan is not an Insured, there is no coverage under the Essex Policy for the *Young, Brown, Kohl, Curtis, Glaspie, Lingelbach, Nelson*, and *Beesely* Lawsuits.

## COUNT IV

### (Prior Knowledge)

64.    Essex incorporates the allegations of Paragraphs 1-51 above as though fully set forth herein.

65.    The Essex Policy provides, in pertinent part, that coverage is not provided for any Claim, when prior to the May 1, 2015 effective date of the policy, the Insured was aware of a circumstance, situation or incident which may lead a reasonable person in that Insured's position to conclude that a Claim was likely.

66.    Prior to the May 1, 2015 effective date of the Essex Policy, Housecall Physicians of Illinois, S.C. d/b/a MD@Home knew of: (1) the 2014 suspension of Charles Dehaan's license to practice medicine in the State of Illinois; and (2) multiple reports, criminal charges and at least six civil lawsuits involving allegations that Dehaan perpetrated acts of sexual assault upon patients he had treated while on contract with Housecall Physicians of Illinois, S.C. d/b/a MD@Home.

67.    Accordingly, no coverage is afforded to Housecall Physicians of Illinois, S.C. d/b/a MD@Home for the *Young, Brown, Kohl, Curtis, Glaspie, Lingelbach, Nelson*, and *Beesely* Lawsuits.

**COUNT V**

**(Failure to Disclose)**

68.     Essex incorporates the allegations of Paragraphs 1-51 above as though fully set forth herein.

69.     Prior to the May 1, 2015 effective date of the Essex Policy, Housecall Physicians of Illinois, S.C. d/b/a MD@Home knew of: (1) the emergency suspension of Charles Dehaan's license to practice medicine in the State of Illinois; and (2) multiple acts of Malpractice, Professional Personal Injury and/or Sexual Injury committed by Charles Dehaan, criminal charges and at least six civil lawsuits involving allegations that Dehaan perpetrated acts of sexual battery upon numerous patients he had treated while on contract with Housecall Physicians of Illinois, S.C. d/b/a MD@Home.

70.     As a consequence of this knowledge, Housecall Physicians of Illinois, S.C. d/b/a MD@Home was required to disclose, but instead concealed the true facts from Essex concerning Charles Dehaan which, if known, would have resulted in the Essex Policy either not being issued or the inclusion of a policy exclusion specifically barring coverage for any Claims involving Charles Dehaan.

71.     Accordingly, it is appropriate that the Essex Policy be reformed and/or rescinded so as to not apply to the *Young, Brown, Kohl, Curtis, Glaspie, Lingelbach, Nelson*, and *Beesely* Lawsuits, as well as any future Claims arising out of Dehaan's alleged conduct.

WHEREFORE, Plaintiff, ESSEX INSURANCE COMPANY, respectfully requests an Order of this Court finding and declaring:

a.     Essex has no duty to defend either Charles Dehaan or Housecall Physicians of Illinois, S.C. d/b/a MD@Home under Policy MM 825507 in the *Young, Brown, Kohl, Glaspie, Nelson, Curtis, Lingelbach*, and *Beesely* Lawsuits.

b.     Essex has no duty to indemnify either Charles Dehaan or Housecall Physicians of Illinois, S.C. d/b/a MD@Home under Policy MM 825507 in connection with the *Young, Brown, Kohl, Glaspie, Nelson, Curtis, Lingelbac*h, and *Beesely* Lawsuits; and

c.     For such other and further relief as this Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Essex demands a trial by jury in this action of all issues so triable.

DATED this 25th day of February, 2016.

Respectfully submitted,

/s/ Steven D. Pearson
One of the attorneys for Plaintiff,
ESSEX INSURANCE COMPANY

Steven D. Pearson
David L. Sanders
COZEN O'CONNOR
123 N. Wacker Drive, Suite 1800
Chicago, IL 60606
(312) 474-7900
(312) 474-7898 (fax)

LEGAL\25793523\1