Exhibit J

A STOCK COMPANY



## ESSEX INSURANCE COMPANY
### 1209 Orange Street
### Wilmington, DE 19801
### (804) 273-1400

**INSURANCE POLICY**

**Coverage afforded by this policy is provided by the Company (Insurer) and named in the Declarations.**

In Witness Whereof, the company (insurer) has caused this policy to be executed and attested and countersigned by a duly authorized representative of the company (insurer) identified in the Declarations.

_Kathleen Anne Sturgeon_
Secretary

_Gerard albanese_
President

**MJIL 1000 06 10**

Page 1 of 1



# ESSEX INSURANCE COMPANY

## DECLARATIONS
## LOCUM TENENS AND CONTRACT STAFFING
## PROFESSIONAL LIABILITY INSURANCE

**Claims Made:** The coverage afforded by this Coverage Part is limited to liability for only those Claims that are first made against the Insured during the Policy Period or the Extended Reporting Period, if exercised, and reported to the Company pursuant to the terms herein.

**Notice:** This is a duty to defend Coverage Part. Additionally, this Coverage Part contains provisions that reduce the Limits of Liability stated in the policy by the costs of legal defense and permit legal defense costs to be applied against the deductible, unless the Coverage Part is amended by endorsement. Please read the policy carefully.

POLICY NUMBER: MM825507          RENEWAL OF POLICY: NEW

1. **NAMED INSURED:**

   A. Coverage A. Individual Professional Liability Coverage:  Coverage A. Named Insured(s):

   Employed and Contracted Physicians and Allied Healthcare professionals providing Medical Services through the Coverage B Named Insured  See Endorsement No. 2

   B. Coverage B. Organization Liability Coverage:  Coverage B. Named Insured:  HOUSECALL PHYSICIANS OF ILLINIOS SC DBA: MD@HOME

2. **BUSINESS ADDRESS:**      1100 W. CERMAK RD STE 500
                                  CHICAGO, IL  60608

3. **POLICY PERIOD:**      From May 1, 2015 to May 1, 2016
                                  12:01 A.M. Standard Time at address of Insured stated above

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, THE COMPANY AGREES WITH THE NAMED INSURED TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

4. **LIMITS OF LIABILITY:**

   A. For Coverage A. Individual Professional Liability:

   | | | |
   |---|---|---|
   | i. | Each Claim: | $1,000,000 |
   | ii. | Aggregate: | $3,000,000 |

   B. For Coverage B. Organization Liability:

   | | | |
   |---|---|---|
   | i. | Each Claim: | $1,000,000 |
   | ii. | Aggregate: | $3,000,000 |

   C. Coverage A., Coverage B. or both Coverage A. and B. combined:

   | | | |
   |---|---|---|
   | i. | Single Per Patient Claim: | $1,000,000 |
   | D. | Coverage Part Aggregate: | $3,000,000 |

---

Producer Name and Address

AH200
RPS HEALTHCARE
550 West Van Buren Street  Suite 1200
Chicago, IL  60607

---

Policy No. MM825507

5. **DEDUCTIBLE:** $ 5,000

6. **RETROACTIVE DATE:**

    A. Coverage A. Individual Professional Liability:     See Endorsement No. 2

    B. Coverage B. Organization Liability:     January 1, 2012

7. **PREMIUM FOR POLICY PERIOD:**

    Minimum     $ 54,600.00

    Deposit     $ 54,600.00

    **RATE:**   Flat

8. **PREMIUM FOR EXTENDED REPORTING PERIOD:** 150% for 12 months; 175% for 24 months; or 200% for 36 months

9. **FORMS AND ENDORSEMENTS ATTACHED AT POLICY INCEPTION:**

    See MDIL 1001 08 10 attached.

10. **NOTICES:**

    Notices required to be provided to the Company under this policy shall be addressed to:

| **CLAIM OR DISCOVERY CLAUSE NOTICES:** | **ALL OTHER NOTICES:** |
|---|---|
| Claims Service Center | MARKEL MIDWEST |
| MARKEL SERVICE, INCORPORATED | a division of Markel Service, Incorporated |
| Ten Parkway North | Ten Parkway North |
| Deerfield, Illinois 60015 | Deerfield, IL 60015 |
| | |
| Fax: (855) 662-7535 | Fax: (866) 730-2526 |
| E-mail: newclaims@markelcorp.com | |

**These declarations, together with the Common Policy Conditions, Coverage Part(s), any Endorsement(s) and any application(s), complete the above numbered policy.**

| Countersigned: August 7, 2015 | By: | _Gerard albanere_ |
|---|---|---|
| (Date) | | Authorized Representative |



# ESSEX INSURANCE COMPANY

## FORMS SCHEDULE

| Form Number | Form Name |
|---|---|
| MELT 2200 07 11 | Common Policy Conditions |
| MELT 0001 07 11 | Locum Tenens and Contract Staffing Professional Liability Insurance Coverage Part |
| 1. MELT 2203 07 11 | Premium Audit Endorsement |
| 2. MELT 2211 07 11 | Schedule of Coverage A. Named Insureds |
| 3. EIC 4339 | Medical Director Exclusion |
| 4. MELT 2223 01 14 | Longer Duration Extended Reporting Period Availability |
| 5. MELT 2204 05 12 | Locum Tenens Daily Rate Premium Audit Endorsement |
| 6. MEIL 5410 02 12 | Amendment of Definitions and Exclusions - Electronic Data and Distribution of Material in Violation of Statutes |
| 7. MELT 2218 02 14 | Non-Stacking Limitation When Two or More Policies Apply |
| 8. MEIL 5409 09 10 | Nuclear Energy Liability Exclusion Endorsement (Broad Form) |
| 9. Manuscript | Sexual Acts Liability Endorsement |

MDIL 1001 08 10



INTERLINE
POLICY NUMBER: MM825507

# ESSEX INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## PREMIUM AUDIT ENDORSEMENT

This endorsement modifies insurance provided under the following:

LOCUM TENENS AND CONTRACT STAFFING PROFESSIONAL LIABILITY INSURANCE COVERAGE PART

In consideration of the premium paid, it is hereby understood and agreed that section Common Policy Conditions is added as follows:

**OTHER CONDITIONS:**

**Premium Audit:** Upon expiration of this policy, the first Coverage B. Named Insured shall furnish to the Company or its underwriting manager, on behalf of the Company, a statement of the actual total premium base as stated in the Schedule below. The actual earned premium shall be computed thereon at the premium rate stated in the Schedule below. If the actual earned premium is more than the premium stated in the Schedule below, the first Coverage B. Named Insured shall pay the difference to the Company; if less, the Company shall refund the difference to the first Coverage B. Named Insured except that the Company shall be entitled to the minimum premium as stated in the Schedule below. The Company or its underwriting manager, on behalf of the Company, shall have the right to require of the first Coverage B. Named Insured, at any time within the said Policy Period or one (1) year thereafter, a sworn statement of the entire amount (or number) of such premium base during the whole or any specified part of the said period, and the first Coverage B. Named Insured shall furnish said statement within ten (10) days after request. The statement referred to shall be subject to verification and audit by a duly authorized representative of the Company, who shall have the right and opportunity to examine the books and records of the Coverage B. Named Insured as respects such premium base, and such examination may be made at any time during the said period and within three (3) years thereafter. The rendering of any estimate or statement or the making of any previous settlement shall not bar the examination herein provided for, nor the Company's right to additional premium.

### SCHEDULE

Rate: $3.67

Premium Base: Patient Visits

Minimum Premium: $54,600.00

All other terms and conditions remain unchanged.

**MELT 2203 07 11**



**INTERLINE**
POLICY NUMBER: MM825507

# ESSEX INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## SCHEDULE OF COVERAGE A. NAMED INSUREDS

This endorsement modifies insurance provided under the following:

LOCUM TENENS AND CONTRACT STAFFING PROFESSIONAL LIABILITY INSURANCE COVERAGE PART

In consideration of the premium paid, it is hereby understood and agreed that Section The Insured A.1. is deleted and replaced with the following:

1. the Coverage A. Named Insured which is herein defined as each individual stated in the Schedule below, but solely while acting on behalf of the Coverage B. Named Insured and within the scope of their duties, subject to the following:

   a. as respects each such Named Individual(s), Item 6. of the Declarations, Retroactive Date, will be as stated for that Coverage A. Named Insured in the Schedule below; and

   b. each such individual shall be a Coverage A. Named Insured solely with respect to any Claim made against such individual on or after the Effective Coverage Date and prior to the Termination/Expiration Coverage Date, which dates are stated for that Coverage A. Named Insured in the Schedule below.

### Schedule

| | | Coverage Date | |
| --- | --- | --- | --- |
| Named Individual: | Retroactive Date: | Effective: | Termination/ Expiration: |
| Brian Boe, M.D. | January 2, 2012 | Inception | End of Policy Period |
| Abel Ganbaldi, M.D. | January 16, 2015 | Inception | End of Policy Period |
| John F. Bartizal, Jr., M.D. | September 8, 2012 | Inception | End of Policy Period |
| Russell Martin Miller, M.D. | August 1, 2012 | Inception | End of Policy Period |
| Peter a. Olusoji, M.D. | January 20, 2015 | Inception | End of Policy Period |
| Larry Mitchell, M.D. | | Inception | End of Policy Period |
| Kimberly Williams, M.D. | | Inception | End of Policy Period |
| Ronald Keller, P.A. | December 5, 2014 | Inception | End of Policy Period |
| Kenyatta Evans-Snulligan, N.P. | January 2, 2015 | Inception | End of Policy Period |
| Phillip Moreau, N.P. | February 16, 2015 | Inception | End of Policy Period |
| Sue Menschig, N.P. | February 16, 2015 | Inception | End of Policy Period |

All other terms and conditions remain unchanged.

**MELT 2211 07 11**

**Page 1 of 1**

 **ESSEX INSURANCE COMPANY**

## Endorsement

| | |
|---|---|
| Named Insured:<br>HOUSECALL PHYSICIANS OF ILLINIOS SC<br>DBA: MD@HOME | Attached to and forming<br>a part of Policy No.:     MM825507<br>Endorsement No.:     3<br>Effective Date of Endorsement:   May 1, 2015 |

### MEDICAL DIRECTOR EXCLUSION

In consideration of the premium paid, it is hereby understood and agreed that Section The Exclusions is amended by the addition of the following exclusion:

> any Claim based upon or arising out of the administrative acts rendered or that should have been rendered as Medical Director for Share Program, 1776 Moon Lake Blvd., Hoffman Estates, IL 60169.

All other provisions of the policy shall remain unchanged.

**EIC 4339 1/03**                                                           **Page 1 of 1**



**INTERLINE**
POLICY NUMBER: MM825507

# ESSEX INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## LONGER DURATION EXTENDED REPORTING PERIOD AVAILABILITY

This endorsement modifies insurance provided under the following:

LOCUM TENENS AND CONTRACT STAFFING PROFESSIONAL LIABILITY INSURANCE COVERAGE PART
LOCUM TENENS AND CONTRACT STAFFING GENERAL LIABILITY INSURANCE (INCLUDING PRODUCTS AND COMPLETED OPERATIONS LIABILITY) COVERAGE PART - CLAIMS MADE COVERAGE

In consideration of the premium paid, it is hereby understood and agreed that in addition to the availability of the Extended Reporting Period for the period of months stated in Item 8. of the Declarations, an Extended Reporting Period of the following duration shall also be available:

48 months;
60 months;
72 months; or
84 months.

The Coverage B. Named Insured must make a written request for the longer duration Extended Reporting Period received by the Company within 10 days after the end of the Policy Period. The written request must specify from the options stated above which period of Extended Reporting Period is requested. The Company will determine the additional premium to be charged for such Extended Reporting Period.

The Company will provide to the Coverage B. Named Insured in writing the amount of the additional premium for an Extended Reporting Period of the duration specified within 10 days of receipt of the Named Insured's written request.

All other terms and conditions of the Section EXTENDED REPORTING PERIOD shall apply with regard to the Coverage B. Named Insured's exercise of any such longer duration Extended Reporting Period.

All other terms and conditions remain unchanged.

**MELT 2223 01 14**

**Page 1 of 1**



**INTERLINE**
POLICY NUMBER: MM825507

# ESSEX INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## LOCUM TENENS DAILY RATE PREMIUM AND AUDIT ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMON POLICY CONDITIONS
LOCUM TENENS AND CONTRACT STAFFING PROFESSIONAL LIABILITY INSURANCE COVERAGE PART

In consideration of the premium paid, it is hereby understood and agreed that the Common Policy Conditions is amended as follows:

1.  The following is added:

### N. PREMIUM AND AUDIT

Upon expiration of this policy, the first Coverage B. Named Insured shall furnish to the Company or its underwriting manager, on behalf of the Company, a statement of the Coverage B. Named Insured's actual total premium base as stated herein below for the Policy Period. The actual earned premium shall be computed thereon at the premium rates stated herein below. If the actual earned premium is more than the deposit premium stated in the Declarations, the first Coverage B. Named Insured shall pay the difference to the Company. If the audited actual earned premium is less than the deposit premium the Company shall refund the difference to the first Coverage B. Named Insured except that the Company shall be entitled the minimum premium as stated in the Declarations. The Company or its underwriting manager, on behalf of the Company, shall have the right to require of the first Coverage B. Named Insured, at any time within the said Policy Period or one (1) year thereafter, a sworn statement of the entire number of such premium base during the whole or any specified part of the said period, and the first Coverage B. Named Insured shall furnish said statement within ten (10) days after request. The statement referred to shall be subject to verification and audit by a duly authorized representative of the Company, who shall have the right and opportunity to examine the books and records of the Coverage B. Named Insured as respects such premium base, and such examination may be made at any time during the said period and within three (3) years thereafter. The rendering of any estimate or statement or the making of any previous settlement shall not bar the examination herein provided for, nor the Company's right to additional premium.

**Premium Base:**  number of locum tenens days by Provider Classification (see below)

**Day:**  1 day equals 8 hours for all specialties with the exception of Emergency Medicine, Hospitalist, and Neonatology. For those 3 specialties, 1 day equals 12 hours.

**Premium Rate:**

| Provider Classification and Description | Rates Per Locum Tenens Days |
|---|---|
| 1A. Allergy; Dermatology - no surgery; Psychiatry-no shock treatment; podiatry-no surgery, no invasive procedures | $ 29.95 |

| Provider Classification and Description | | Rates Per Locum Tenens Days |
|---|---|---|
| 1. | Physicians - no surgery, no invasive procedures other than incision of boils or suturing of skin, no obstetrics: Cardiology; Endocrinology; Family Practice; Gastroenterology; General Practice; Geriatrics; Gynecology; Hematology; Infectious Disease; Internal Medicine; Nephrology; Neurology; Oncology; Ophthalmology; Otorhinolaryngology; Pathology; Pediatrics; Pulmonary Disease; Rheumatology | $ 37.40 |
| 2. | Physicians – minor surgery, invasive procedures: Critical Care (pediatric and adult); Dermatology; Diabetes; Endocrinology; Family Practice; Gastroenterology; General Practice; Geriatrics; Gynecology; Hematology (including bone morrow); Hospitalist – no surgery, no obstetrics; Intensivist – Adult; Nephrology; Ophthalmology; Radiology including invasive procedures such as angiography, arteriography, venography; procedures requiring catheterization or radiopaque dye injections; Oncology; Oral Surgery; Urgent Care; Interventional/Invasive Cardiology | $ 55.95 |
| 3. | Family Practice with normal vaginal delivery; General Practice with normal vaginal delivery; Urology – minor surgery ; Reproductive Endocrinology; Ophthalmology – major surgery; Neonatology; Pediatric Intensivist; Podiatry-invasive procedures or surgery | $ 74.80 |
| 4. | Emergency Medicine- no surgery; Otorhinolarynogology – major surgery – no plastic; Correctional/Prison Medicine | $ 93.45 |
| 5A. | Anesthesia; Pain Management | $ 105.00 |
| 5. | General Surgery including Emergency, Plastic, Cosmetic; Gynecology; Otorhinolarynogology with Plastics; Surgicalists | $ 149.50 |
| 6. | Surgery including Bariatric, Cardiac, Cardiovascular, Thoracic, Orthopedics | $ 194.35 |
| 7. | Obstetrics/Gynecology; Maternal-Fetal Medicine; Perinatology Hospitalists – Obstetrics/Gynecology | $ 231.70 |
| 8. | Surgery, Neurologic | $ 306.50 |
| | Certified Register Nurse Anesthetist (CRNA) | $ 25.50 |
| | Nurse Practitioner (RN-P) - no emergency room, no OB | $ 11.65 |
| | Physician Assistant (P.A.) - no emergency room | $ 11.65 |
| | Physician Assistant (P.A.) - emergency room | $ 25.50 |

2. Section A. Cancellation is deleted and replaced with the following:

**A. CANCELLATION**

This policy may be cancelled by the Coverage B. Named Insured on behalf of all Insureds by mailing written notice as stated in the Notices item of the Declarations stating when thereafter such cancellation shall be effective. If cancelled by the Coverage B. Named Insured, the Company shall compute the earned premium for the policy based on the rates stated above and the premium base accrued up to the date cancellation is effective. Payment or tender of unearned premium shall not be a condition precedent to the effectiveness of cancellation, but such payment shall be made as soon as practicable.

This policy may be cancelled by the Company or by its underwriting manager, by mailing to the Coverage B. Named Insured on behalf of all Insureds at the address stated in the Declarations written notice stating when, not less than thirty (30) days thereafter, such cancellation shall be effective. However, if the Company cancels the policy because the Coverage B. Named Insured has failed to pay a premium or deductible when due, including premium and deductible(s) due on any other policy(ies) issued by the Company or any of its affiliated companies in an uninterrupted series of policies for which this policy is a renewal or replacement, this policy may be cancelled by the Company by mailing a written notice of cancellation to the Coverage B. Named Insured stating when, not less than ten (10) days thereafter, such cancellation shall be effective. The mailing of notice as

**MELT 2204 05 12**

aforementioned shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the Policy Period. Delivery of such written notice by the Coverage B. Named Insured, the Company, or its underwriting manager shall be equivalent to mailing. If cancelled by the Company or its underwriting manager, the Company shall retain the actual earned premium. Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter.

All other terms and conditions remain unchanged.

**MELT 2204 05 12**

**INTERLINE**

**MARKEL**®

## ESSEX INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## AMENDMENT OF DEFINITIONS AND EXCLUSIONS – ELECTRONIC DATA AND DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES

This endorsement modifies insurance provided under the following:

LOCUM TENENS AND CONTRACT STAFFING PROFESSIONAL LIABILITY INSURANCE COVERAGE PART
SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE POLICY
SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY COVERAGE PART – CLAIMS MADE COVERAGE
SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERAGE PART – CLAIMS MADE COVERAGE
PHYSICIANS, SURGEONS, DENTISTS AND PODIATRISTS AND PROFESSIONAL LIABILITY INSURANCE POLICY

Section The Exclusions is amended by the addition of the following:

any Claim based upon or arising out of any violation of:

(a) the Telephone Consumer Protection Act of 1991 (TCPA) and amendments thereto or any similar or related federal or state statute, law, rule, ordinance or regulation;

(b) the CAN-SPAM Act of 2003 and amendments thereto or any similar or related federal or state statute, law, rule, ordinance or regulation; or

(c) any other statute, law, rule, ordinance or regulation that prohibits or limits the sending, transmitting, communication or distribution of information or other material.

All other terms and conditions remain unchanged.

**MEIL 5410 02 12**

**Page 1 of 1**

**INTERLINE**



## ESSEX INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NON-STACKING LIMITATION WHEN TWO OR MORE POLICIES APPLY

This endorsement modifies insurance provided under the following:

COMMON POLICY CONDITIONS

In consideration of the premium paid, it is understood and agreed that the following is added to Common Policy Conditions D., Other Insurance:

If any Claim under this policy is also covered by one or more policies issued by the Company or any of its affiliated companies affording coverage to the Named Insured or to any organization or person who controls, is controlled by, or is affiliated by common control with the Named Insured unless such other insurance is written only as specific excess insurance or umbrella insurance over the Limits of Liability provided in this policy, then with respect to such Claim:

1. the Limit of Liability available under this policy will be equal to the percentage that this policy's available Limit of Liability bears to the total combined Limits of Liability available under all applicable policies; and

2. the total Limit of Liability available for such Claim shall not exceed the greater/est available Limit of Liability remaining on all such policies and its payment shall extinguish the Company's and its affiliated companies' liability on all such policies for such Claim.

Nothing contained in this endorsement shall be construed to increase the Limits of Liability of this Policy.

All other terms and conditions remain unchanged.

**MELT 2218 02 14**                                                                                    **Page 1 of 1**

**INTERLINE**



# ESSEX INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (BROAD FORM)

It is agreed that:

1. This policy does not apply:

   **A.** Under any Liability Coverage, to bodily injury or property damage

   **(1)** with respect to which an Insured under this policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   **(2)** resulting from the hazardous properties of nuclear material and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   **B.** Under any Medical Payments Coverage, or any Supplementary Payments provision relating to first aid, to expenses incurred with respect to bodily injury resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

   **C.** Under any Liability Coverage, to bodily injury or property damage resulting from the hazardous properties of nuclear material, if

   **(1)** the nuclear material (a) is at any nuclear facility owned by, or operated by or on behalf of, an Insured or (b) has been discharged or dispersed therefrom;

   **(2)** the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an Insured; or

   **(3)** the bodily injury or property damage arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to property damage to such nuclear facility and any property thereat.

2.   As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties;

"nuclear material" means source material, special nuclear material or by-product material;

"source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

"waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of any nuclear facility within the definition of nuclear facility under paragraph (a) or (b) thereof;

"nuclear facility" means

(a)   any nuclear reactor,

(b)   any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c)   any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d)   any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"property damage" includes all forms of radioactive contamination of property.

All other terms and conditions remain unchanged.

**MEIL 5409 09 10**                                                                                                            **Page 2 of 2**



## ESSEX INSURANCE COMPANY

**Endorsement**

| Named Insured: | Attached to and forming | |
|---|---|---|
| HOUSECALL PHYSICIANS OF ILLINIOS SC | a part of Policy No.: | MM825507 |
| DBA: MD@HOME | Endorsement No.: | 9 |
| | Effective Date of Endorsement: | May 1, 2015 |

### SEXUAL ACTS LIABILITY ENDORSEMENT

This endorsement modifies insurance provided under the following:

**Locum Tenens and Contract Staffing Professional Liability Insurance Coverage Part**

In consideration of the premium paid, it is hereby understood and agreed that the Locum Tenens/Contract Staffing Services Professional Liability Insurance Coverage Part is amended as follows:

1.  Section Insuring Agreement is amended by the addition of the following:

    **B.** **Sexual Acts Liability**: The Company shall pay on behalf of the Insured all sums in excess of the Deductible amount stated in Item 7 B. of the Declarations, which the Insured shall become legally obligated to pay as Damages as a result of Claims first made against the Insured during the Policy Period or during the Extended Reporting Period, if exercised, for Sexual Injury arising out of any Sexual Act perpetrated or alleged to have been perpetrated by the Insured or by any person for whose actions the Insured is legally responsible, or for allegations that the Insured was negligent in hiring, training or supervising any Insured person who perpetrated or is alleged to have perpetrated a Sexual Act resulting in Sexual Injury provided:

    1.  such Sexual Act arises out of the conduct of the Insured's Professional Services;

    2.  such Sexual Act is perpetrated or alleged to have been perpetrated during the Policy Period or on or after the Retroactive Date as stated in Item 8. of the Declarations and before the end of the Policy Period; and

    3.  prior to the effective date of this policy the Insured had no knowledge of such Sexual Act or any fact, circumstance, situation or incident involving such Sexual Act which may result in a Claim under this policy.

2.  Section Definitions is amended by the addition of the following:

    **N.** **Sexual Act** means sexual abuse, sexual molestation or sexual exploitation arising out of the conduct of the Insured's Professional Services.

**O.** **Sexual Injury** means bodily injury, sickness, disease, unlawful detention, false imprisonment, humiliation, emotional distress, mental anguish, sexual dysfunction, invasion of right of privacy, assault or battery, solely when arising out of a Sexual.

3. Section The Exclusions L. is deleted

4. Section The Exclusions is amended by the addition of the following exclusions:

Y. to any Insured who perpetrates or is alleged to have perpetrated a Sexual Act resulting in Sexual Injury; provided, however, the Company shall defend such Insured and pay Claim Expenses on their behalf unless it is established in fact that such Insured perpetrated such Sexual Act;

Z. to any manager, supervisor, officer, director, trustee or partner who gains knowledge of any actual or alleged Sexual Act and fails to take reasonable care to prevent a future Sexual Act;

AA. to any Claim based upon or arising out of any Sexual Act which is perpetrated or alleged to have been perpetrated by an Insured who previously perpetrated or is alleged to have previously perpetrated a Sexual Act, and after a manager, supervisor, officer, director, trustee or partner has gained knowledge of the previously perpetrated or previously alleged to have been perpetrated Sexual Act; or

BB. to any Claim based upon or arising out of Sexual Injury to any employee of the Insured.

5. Section Limits of Liability is amended by the addition of the following:

J. **Limit of Liability - Sexual Acts Liability Coverage**: The total liability of the Company for the combined total of Damages and Claim Expenses for all Claims insured herein because of Sexual Injury or allegations that the Insured was negligent in hiring, training or supervising any Insured person who perpetrated or is alleged to have perpetrated a Sexual Act resulting in Sexual Injury is limited to:

1. $1,000,000 All Claims Made by Each Claimant

2. $3,000,000 All Claims under Sexual Acts Liability Coverage

Multiple Sexual Acts: Two or more Sexual Acts against one person shall be deemed to be one Sexual Act and shall be subject to the coverage and limits in effect at the time of the first Sexual Act.

6. Section Limits of Liability 6. is amended by the addition of the following:

Subject to Section Limits of Liability J., Limits of Liability - Sexual Acts Liability Coverage, the total liability of the Company for all Damages and Claim Expenses for all Claims insured herein because of Sexual Injury or allegations that the Insured was negligent in hiring, training or supervising any Insured person who perpetrated or is alleged to have perpetrated a Sexual Act resulting in Sexual Injury shall be part of and

not in addition to the amount stated in Item 6. (b) (d) of the Declarations, Policy Aggregate Limit of Liability, arising out of all Claims first made against the Insured during the Policy Period and the Extend Reporting Period, if exercised.

**INTERLINE**

**MARKEL®**

## ESSEX INSURANCE COMPANY

## COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

Throughout this policy, the term Company refers to the insurance company providing this insurance.

### A. CANCELLATION

This policy may be cancelled by the Coverage B. Named Insured on behalf of all Insureds by mailing written notice as stated in the Notices item of the Declarations stating when thereafter such cancellation shall be effective. If cancelled by the Coverage B. Named Insured, the Company shall retain the customary short rate proportion of the premium. Payment or tender of unearned premium shall not be a condition precedent to the effectiveness of cancellation, but such payment shall be made as soon as practicable.

This policy may be cancelled by the Company or by its underwriting manager, by mailing to the Coverage B. Named Insured on behalf of all Insureds at the address stated in the Declarations written notice stating when, not less than thirty (30) days thereafter, such cancellation shall be effective. However, if the Company cancels the policy because the Coverage B. Named Insured has failed to pay a premium or deductible when due, including premium and deductible(s) due on any other policy(ies) issued by the Company or any of its affiliated companies in an uninterrupted series of policies for which this policy is a renewal or replacement, this policy may be cancelled by the Company by mailing a written notice of cancellation to the Coverage B. Named Insured stating when, not less than ten (10) days thereafter, such cancellation shall be effective. The mailing of notice as aforementioned shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the Policy Period. Delivery of such written notice by the Coverage B. Named Insured, the Company, or its underwriting manager shall be equivalent to mailing. If cancelled by the Company or its underwriting manager, earned premium shall be computed pro rata. Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter.

### B. REPRESENTATIONS

By acceptance of this policy, the Insureds agree as follows:

1. that the information and statements contained in the application(s) are the basis of this policy and are to be considered as incorporated into and constituting a part of this policy; and

2. that the information and statements contained in the application(s) are their representations, that they shall be deemed material to the acceptance of the risk or hazard assumed by the Company under this policy, and that this policy is issued in reliance upon the truth of such representations.

### C. ENTIRE AGREEMENT

The Declarations, Common Policy Conditions, Coverage Part(s), any written endorsements and any application(s) shall be deemed to be a single unitary contract.

### D. OTHER INSURANCE

This insurance shall be in excess of the applicable Deductible stated in the Declarations and any other valid and collectible insurance available to the Insured whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as a specific excess insurance over the Limits of Liability provided in this policy.

INTERLINE

**E. CHANGES**

Notice to any agent or knowledge possessed by any agent or other person acting on behalf of the Company shall not effect a waiver or a change in any part of this policy and shall not estop the Company from asserting any right under the terms of the policy. The terms of this policy shall not be waived or changed, except by written endorsement issued to form a part of this policy, and this policy embodies all agreements existing between the Insureds and the Company or any of its agents relating to this insurance.

**F. ASSIGNMENT OF INTEREST**

Assignment of interest under this policy shall not bind the Company unless its consent is endorsed hereon.

**G. SUBROGATION**

In the event of any payment under this policy, the Company shall be subrogated to the right of recovery of all Insureds to the extent of such payment. The Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after the Claim to prejudice such rights.

The Company shall not exercise any such rights against any person or organization included in the definition of Insured. Notwithstanding the foregoing, however, the Company reserves the right to exercise any rights of subrogation against an Insured in respect of any Claim brought about or contributed to by an intentional, willful, dishonest, fraudulent act or omission of such Insured or by an act or omission of such Insured that constitutes a willful violation of any statute or regulation.

Any amount so recovered, whether effected by the Company or by the Insured, shall first be used for the repayment of expenses incurred toward subrogation; second, for any Damages and Claim Expenses payment by the Insured which is in excess of the amount of the Limit of Liability under this policy and which is excess of any amount paid by any insurer under any other policy; third, for any damages and claims expenses payment by any excess carrier on behalf of the Insured; fourth, for any damages and claim expenses payment by any primary carrier on behalf of the Insured; and, last, for repayment of the Insured's Deductible.

**H. ASSISTANCE AND COOPERATION OF THE INSURED**

The Insured shall cooperate with the Company and upon the Company's request, the Insured shall:

**1.** submit to examination and interview by a representative of the Company, under oath if required;

**2.** attend hearings, depositions and trials;

**3.** assist in effecting settlement, securing and giving evidence, obtaining the attendance of witnesses in the conduct of suits;

**4.** give a written statement or statements to the Company's representatives and meet with such representatives for the purpose of determining coverage and investigating and/or defending any Claim; and

**5.** provide any information required to comply with federal or state reporting regulations;

all without cost to the Company. The Insured shall further cooperate with the Company and do whatever is necessary to secure and effect any right of indemnity, contribution or apportionment which the Insured may have. The Insured shall not, except at his/her own cost, make any payment, admit any liability, settle any Claims, assume any obligation or incur any expense without the written consent of the Company.

**I. FALSE OR FRAUDULENT CLAIMS**

If any Insured shall commit fraud in proffering any Claim, this insurance shall become void as to such insured from the date such fraudulent Claim is proffered.

**J. INSPECTION AND AUDIT**

The Company shall be permitted but not obligated to inspect the Insured's operations at any time. Neither the Company's right to make inspections, nor the making thereof, nor any report thereon shall constitute an undertaking on behalf of or for the benefit of the Insured or others, to determine or warrant that such operations are safe or healthful, or are in compliance with any law, rule or regulation.

The Company may examine and audit the Insured's books and records at any time during the Policy Period and within three years after the final termination of this policy, as far as they relate to the subject matter of this policy.

## K.   ACTION AGAINST THE COMPANY

No action shall lie against the Company unless, as a condition precedent thereto, the Insured shall have fully complied with all of the terms and conditions of this policy, nor until the amount of the Insured's obligation to pay shall have been fully and finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the claimant and the Company.

Nothing contained in this policy shall give any person or organization any right to join the Company as a co-defendant in any action against the Insured to determine the Insured's liability. Bankruptcy or insolvency of the Insured or of the Insured's estate shall not relieve the Company of any of its obligations hereunder.

## L.   AUTHORIZATION

By acceptance of this policy, the first Coverage B. Named Insured stated in Item 1. of the Declarations shall act on behalf of all Insureds with respect to the giving and receiving of all notices to and from the Company as provided herein: the exercising of the Extended Reporting Period, if available; the cancellation of this policy in whole or part; the payment of premiums and Deductibles when due; the receiving of any return premiums that may become due under this policy; and the Insureds agree that such organization shall act on their behalf.

## M.   SERVICE OF SUIT

Except with respect to any policy issued in any state in which the Company is licensed as an admitted insurer to transact business, it is agreed that in the event of the failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the Coverage B. Named Insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such court. Nothing in this clause constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process in such suit may be made upon Secretary, Legal Department, Markel Service, Incorporated, Ten Parkway North, Deerfield, Illinois 60015 and that in any suit instituted against the Company upon this policy, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, the Company hereby designates the Superintendent, Commissioner, or Director of Insurance or other official specified for that purpose in the statute, or his/her successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Named Insured or any beneficiary hereunder arising out of this policy, and hereby designates the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

**INTERLINE**



## ESSEX INSURANCE COMPANY

## LOCUM TENENS AND CONTRACT STAFFING
## PROFESSIONAL LIABILITY INSURANCE COVERAGE PART

THIS IS A CLAIMS MADE COVERAGE PART. PLEASE READ IT CAREFULLY.

In consideration of the payment of the premium, the undertaking of the Coverage B. Named Insured authorized to act on behalf of all Insureds to pay the Deductible as described herein and in the amount stated in the Declarations, in reliance upon the statements in the application made a part hereof and the underwriting information submitted on behalf of the Insured, and subject to all the terms, conditions and limitation of this policy, the Company agrees with the Coverage A. Named Insured and the Coverage B. Named Insured as follows:

### THE INSURED

The unqualified word "Insured," either in the singular or plural, means:

**A.** under Coverage A. Individual Professional Liability, the Coverage A. Insured:

    **1.** the Coverage A. Named Insured which is herein defined as each individual stated in Item 1.A. of the Declarations, but solely while acting on behalf of the Coverage B. Named Insured and within the scope of their duties as such;

    **2.** any formerly employed or formerly contracted Healthcare Provider of the Coverage B. Named Insured, but solely while acting on behalf of the Coverage B. Named Insured and within the scope of their duties as such; provided:

        **a.** coverage would have been afforded under this policy had the Claim been made while such contracted Healthcare Provider was an Insured under this policy; and

        **b.** there is no other insurance available to such Healthcare Provider for such Claim.

**B.** under Coverage B. Organization Liability, the Coverage B. Insured:

    **1.** the Coverage B. Named Insured which is herein defined as the organization stated in Item 1.B. of the Declarations;

    **2.** any member, stockholder or partner of the Coverage B. Named Insured with respect to Malpractice of others, provided that no member, stockholder or partner shall be an Insured under this paragraph B. with respect to liability for his/her Malpractice;

    **3.** any Employee of the Coverage B. Named Insured, but solely while acting on behalf of the Coverage B. Named Insured and within the scope of their duties as such;

    **4.** any medical director solely while acting on behalf of the Coverage B. Named Insured and solely within the scope of his/her Administrative Duties as such; provided, however, this insurance shall not apply to any Claim made against any medical director who is a physician, surgeon, dentist or podiatrist arising out of the rendering of or failure to render Medical Services in his/her capacity as a physician, surgeon, dentist or podiatrist;

    **5.** the heirs, executors, administrators, assigns and legal representatives of each Insured as stated in Items B.1. - 4. above in the event of his/her death, incapacity or bankruptcy.

INTERLINE

## INSURING AGREEMENT

**A.** **Professional Liability and Claims Made Clause:** The Company shall pay on behalf of the Insured all sums in excess of the Deductible amount stated in the Declarations, which the Insured shall become legally obligated to pay as Damages as a result of Claims first made against the Insured during the Policy Period or during the Extended Reporting Period, if exercised, and reported to the Company pursuant to Section Claims A., Claim Reporting Provision:

    **1.** under Coverage A. Individual Professional Liability: because of Malpractice or Professional Personal Injury, sustained by a patient and committed by the Coverage A. Insured, or by any person for whose Malpractice or Professional Personal Injury the Coverage A. Insured is legally responsible, except as a member, stockholder or partner of an association, corporation, partnership or limited liability company, arising out of the conduct of the Insured's Medical Services;

    **2.** under Coverage B. Organization Liability: because of Malpractice or Professional Personal Injury, sustained by a patient and committed by any person for whom the Coverage B. Named Insured is legally responsible, arising out of the conduct of the Insured's Professional Healthcare Services;

    provided:

    **a.** under Coverage A. Individual Professional Liability: that such Malpractice or Professional Personal Injury happens during the Policy Period or on or after the applicable Retroactive Date stated in the Declarations and before the end of the Policy Period; and

    **b.** under Coverage B. Organization Liability: that such Professional Healthcare Services or Professional Personal Injury happens during the Policy Period or on or after the applicable Retroactive Date stated in the Declarations and before the end of the Policy Period; and

    **c.** prior to the effective date of this policy the Coverage A. and Coverage B. Insureds had no knowledge of such Malpractice, Professional Healthcare Services or Professional Personal Injury or any fact, circumstance, situation or incident which may lead a reasonable person in that Insured's position to conclude that a Claim was likely.

## DEFINITIONS

**A.** **Administrative Duties** means establishing medical protocol, serving on a standards review, peer review, or credentialing committee or similar professional board or committee of the Coverage B. Named Insured; provided, however, Administrative Duties shall not include:

    **1.** rendering or failure to render to a patient Medical Services by a medical director which results in Professional Personal Injury; or

    **2.** rendering or failure to render patient specific medical direction via telecommunications to other healthcare professionals.

**B.** **Claim** means the Insured's receipt of:

    **1.** a demand for monetary damages or services involving Professional Healthcare Services; or

    **2.** the service of suit or institution of arbitration proceedings against the Insured involving Professional Healthcare Services.

**C.** **Claim Expenses** means reasonable and necessary amounts incurred by the Company or by the Insured with the prior written consent of the Company in the defense of that portion of any Claim for which coverage is afforded under this policy, including costs of investigation, court costs, costs of bonds to release attachments and similar bonds, but without any obligation of the Company to apply for or furnish any such bonds, and costs of appeals; provided, however, Claim Expenses shall not include:

    **1.** salary, wages, overhead, or benefit expenses of or associated with employees or officials of the Coverage A. Named Insured or the Coverage B. Named Insured or employees or officials of the Company; or

    **2.** salary, wages, administration, overhead, benefit expenses, or charges of any kind attributable to any in-house counsel or captive out-of-house counsel for the Coverage A. Named Insured or the Coverage B. Named Insured or the Company.

**D.** **Damages** means the monetary portion of any judgment, award or settlement; provided, however, Damages shall not include:

1. punitive or exemplary damages or any multiplied portions of damages in excess of actual damages, including trebling of damages;

2. taxes, criminal or civil fines, or attorneys' fees of a party other than an Insured or other penalties imposed by law;

3. sanctions;

4. matters which are uninsurable under the law pursuant to which this policy shall be construed; or

5. the return, withdrawal, reduction or restitution or payment of fees, profits or charges for services or consideration and/or any expenses paid to the Insured.

**E.** **Employee** means any natural person other than a Healthcare Provider while in the regular service of the Coverage B. Named Insured in the ordinary course of the Coverage B. Named Insured's business and whom the Coverage B. Named Insured compensates by salary, wages or commissions and has the right to govern and direct the performance of such service.

**F.** **Healthcare Provider** means physician, surgeon, dentist, podiatrist, psychologist, nurse midwife, nurse anesthetist, anesthesiologist assistant, nurse practitioner, physician's assistant, surgeon's assistant, optometrist; or any person licensed, certified or otherwise authorized to deliver advanced level healthcare in the absence of direct supervision by a licensed physician, surgeon, dentist or podiatrist.

**G.** **Malpractice** means an act, error or omission in Medical Services rendered or that should have been rendered.

**H.** **Medical Services** means services, including but not limited to Telemedicine Services, provided in the medical care or treatment of any patient, but only where such care or treatment is within the scope of the Healthcare Provider's license, certificate or other qualification to practice Medical Services.

**I.** **Placement Services** means evaluating, selecting, hiring and contracting with Healthcare Providers to provide Medical Services for healthcare organizations; provided, however, Placement Services shall not include medical credentialing or managed care services.

**J.** **Professional Personal Injury** means:

1. any bodily injury, mental injury, sickness, disease, emotional distress or mental anguish, including death resulting therefrom of any patient, arising out of Malpractice;

2. false arrest, detention or imprisonment, or malicious prosecution of any patient, except when inflicted by, at the direction of, or with the consent or acquiescence of the Insured who has predetermined to commit such act, or allowed such act to have been committed, without legal justification; or

3. the publication or utterance of a libel or slander concerning a patient or a publication or an utterance in violation of a patient's right to professional confidence, except when published or uttered by, at the direction of, or with the consent or acquiescence of the Insured who has predetermined to commit such act, or allowed such act to have been committed, without legal justification.

**K.** **Policy Period** means the period from the inception date of this policy to the policy expiration date as stated in the Declarations, or the effective date of any earlier cancellation or termination.

**L.** **Professional Healthcare Services** means:

1. Medical Services; and

2. Placement Services.

**M.** **Telemedicine Services** means the use of medical information exchanged from one site to another via electronic communications to diagnose, treat or refer a patient, including, specialist referral services, patient consultation and remote patient monitoring.

## THE EXCLUSIONS

This insurance does not apply to:

**A.** any Malpractice, Professional Healthcare Services or Professional Personal Injury committed in violation of any law or ordinance;

**B.** any Claim based upon or arising out of any dishonest, fraudulent, criminal, malicious, knowingly, wrongful, deliberate, or intentional acts, errors or omissions committed by or at the direction of the Insured;

**C.** any Malpractice or Professional Personal Injury that happens while the Insured's license or certificate to practice the Insured's profession is suspended, surrendered, revoked, expired, terminated, or otherwise not in effect;

**D.** any Claim based upon or arising out of the invasion of privacy, or the infringement or interference with the right of privacy resulting from the use, visitation of, posting or browsing of any bulletin board services, website or URL location;

**E.** any Claim based upon or arising out of the gathering, use or dissemination of personal information in any form including but not limited to any violation of the Health Insurance Portability and Accountability Act of 1996 (HIPAA);

**F.** any Claim based upon or arising out of any unlawful discrimination by any Insured;

**G.** any Claim based upon or arising out of any act, error or omission committed or alleged to have been committed by the Insured that in any manner relates to or arises out of the actual, alleged or threatened discharge, dispersal, release, escape or existence of pollutants, hazardous substances, toxic substances or substances which in any manner impair or allegedly impair the environment or which result in bodily injury or property damage;

**H.** any liability arising out of the Insured's activities in his/her capacity as proprietor, superintendent, executive officer, director, partner or trustee of any hospital, sanitarium, clinic with bed-and-board facilities, laboratory or any business enterprise not named as an Insured under this policy unless such activities are disclosed in the application and covered by endorsement to this policy;

**I.** any Claim based upon or arising out of the liability of others assumed by the Insured under any contract or agreement, unless such liability would have attached to the Insured even in the absence of such contract or agreement;

**J.** any Claim arising out of general liability, or goods or products manufactured, sold, handled or distributed by the Insured or by others trading under an Insured's name;

**K.** any liability arising out of the ownership, maintenance, operation, use, loading or unloading of any vehicle, watercraft or aircraft;

**L.** any Claim based upon or arising out of any sexual act, including without limitation sexual intimacy (even if consensual), sexual contact, sexual advances, requests for sexual favors, sexual molestation, sexual assault, sexual abuse, sexual harassment, sexual exploitation or other verbal or physical conduct of a sexual nature; provided, however, the Company agrees to defend any such Claim, subject to the applicable limits of liability, until a final judgment has been determined. If judgment is rendered against the Coverage A. Named Insured, the Coverage B. Named Insured, upon written demand by the Company, agrees to reimburse the Company for all Claim Expenses incurred in the defense of such Claim, within ten (10) days;

**M.** any Claim based upon or arising out of Medical Services rendered while an Insured was under the influence of alcohol, narcotics, hallucinogenic agents or which involves any other allegation of substance abuse; provided, however, the Company agrees to defend any such Claim, subject to the applicable limits of liability, until a final judgment has been determined. If judgment is rendered against the Coverage A. Named Insured, the Coverage B. Named Insured, upon written demand by the Company, agrees to reimburse the Company for all Claim Expenses incurred in the defense of such Claim, within ten (10) days;

**N.** any Claim based upon, arising out of, or in any way involving:

    **1.** the employment relationship or the nature, terms or conditions of employment or any workplace tort brought by or on behalf of any Employee, former Employee, prospective Employee, independent contractor or consultant of the Insured or to Professional Personal Injury to, or sickness, disease or death of any Employee of the Insured arising out of, and in the course of his/her employment by the Insured;

**MELT 0001 07 11**

INTERLINE

2.  any obligation of the Insured under any workers' compensation, unemployment compensation or disability benefits law or under any similar law; or

3.  any actual or alleged violation of the Employee Retirement Income Security Act of 1974, or any other similar federal, state or common law or any amendments thereto;

O.  any Claim based upon or arising out of use, administration or prescription of any drug, pharmaceutical, medical device or procedure which has not received final approval by the U. S. Food and Drug Administration (FDA) for treatment of humans or which is not used, administered or prescribed as part of an FDA approved study;

P.  any Claim based upon or arising out of a warranty or guarantee of cure or success of treatment which is alleged to have arisen out of an advertisement;

Q.  any Claim based upon or arising out of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C., Section 1961, et seq.;

R.  any Claim based upon or arising out of Telemedicine Services in a jurisdiction where such Telemedicine Services are not permitted under the definition of the practice of medicine by the Board of Medicine in that jurisdiction;

S.  any Claim based upon or arising out of the disarming or disabling of any alarms or monitoring devices of medical equipment;

T.  any Claim based upon or arising out of:

1.  the failure to maintain medical records in their original condition;

2.  creating, altering, amending or modifying medical records;

3.  improperly disposing of medical records;

4.  the failure to maintain the privacy and security of medical records or private personal information;

U.  any Claim made against the Insured:

1.  by any person or organization or its subrogee, assignee, contractor, subcontractor, or parent company, subsidiary, division or affiliated company which was or is operated, managed, owned or otherwise controlled, whether directly or indirectly, or in whole or in part, by an Insured or parent company or any subsidiary, division or affiliated organization; or

2.  by or on behalf of any Insured under this policy; provided, however, this exclusion shall not apply to any Claim made against any Insured arising out of the rendering of or failure to render Professional Healthcare Services by the Insured or by any person for whose acts, errors or omissions the Insured is legally responsible, if such Insured is a patient of the Insured;

V.  any Claim based upon or arising out of:

1.  any allegations of price fixing, unfair competition or trade practices;

2.  a dispute over fees, income or revenue;

3.  the inducement to enter into, the interference with or the dissolution or termination of any business or economic relationship; or

4.  violations of any federal, state or local law (including but not limited to Title 15 of the United States Code or any similar state statute) that prohibits the unlawful restraint of trade, business or profession;

W.  any Claim based upon or arising out of the professional services provided by a perfusionist; or

X.  any Claim brought under any other Coverage Part of this policy.

## TERRITORY

The insurance afforded applies worldwide, provided the Claim is made in the United States of America, its territories or possessions or Puerto Rico.

**INTERLINE**

## LIMITS OF LIABILITY

A. **Coverage A. Limit of Liability-Each Claim:** The total liability of the Company under Coverage A. for the combined total of Damages and Claim Expenses for each Claim first made against each Coverage A. Insured during the Policy Period or the Extended Reporting Period, if exercised, shall not exceed the Coverage A. Limit of Liability stated in the Declarations as applicable to Each Claim.

B. **Coverage A. Limit of Liability-Aggregate:** Subject to the above Limits of Liability A., the total liability of the Company under Coverage A. shall not exceed the Coverage A. Aggregate Limit of Liability stated in the Declarations for the combined total of Damages and Claim Expenses arising out of all Claims first made against each Coverage A. Insured during the Policy Period and the Extended Reporting Period, if exercised.

C. **Coverage B. Limit of Liability-Each Claim:** The liability of the Company under Coverage B. for the combined total of Damages and Claim Expenses for each Claim first made against each Coverage B. Insured during the Policy Period or the Extended Reporting Period, if exercised, shall not exceed the Coverage B. Limit of Liability stated in the Declarations as applicable to Each Claim.

D. **Coverage B. Limit of Liability-Aggregate:** Subject to the above Limits of Liability C., the total liability of the Company under Coverage B. shall not exceed the Coverage B. Aggregate Limit of Liability stated in the Declarations for the combined total of Damages and Claim Expenses arising out of all Claims first made against each Coverage B. Insured during the Policy Period and the Extended Reporting Period, if exercised.

E. **Coverage A., Coverage B. or Both Coverage A. and B. Combined:** Subject to the above Limits of Liability A., B., C., and D. above, one or more Claims made against more than one Insured under Coverage A., Coverage B. or both Coverage A. and B. combined arising out of Malpractice, Professional Healthcare Services or Professional Personal Injury sustained by one patient shall be a single patient Claim to which the limit of liability for Single Per Patient Claim shall apply to all Insureds. The total liability of the Company shall not exceed the Limit of Liability stated in the Declarations as applicable to Single Per Patient Claim regardless of the number of Insureds against whom Claim is made by or on behalf of one patient. All such Claims, whenever made, shall be deemed to be first made on the date on which the earliest Claim arising out of such Malpractice, Professional Healthcare Services or Professional Personal Injury is made or with regard to notice given to and accepted by the Company pursuant to Section Claims B., Discovery Clause, on the date within the Policy Period on which such notice of potential Claim is first received by the Company, and all such Claims shall be subject to the same Single Per Patient Claim limit of liability.

F. **Coverage Part Aggregate Limit:** Subject to the above Limits of Liability A., B., C., D. and E. above, the total liability of the Company shall not exceed the Coverage Part Aggregate Limit of Liability stated in the Declarations for the combined total of Damages and Claim Expenses arising out of all Claims first made against all Insureds during the Policy Period and the Extended Reporting Period, if exercised.

G. **Deductible:** The deductible amount stated in the Declarations shall be paid by the Coverage B. Named Insured and shall be applicable to each Claim and shall include Damages and Claim Expenses, whether or not Damages payments are made.

Such amounts shall, upon written demand by the Company, be paid by the Coverage B. Named Insured within ten (10) days. The total payments requested from the Coverage B. Named Insured in respect of each Claim shall not exceed the Deductible amount stated in the Declarations.

The determination of the Company as to the reasonableness of the Claim Expenses shall be conclusive on the Insured.

H. **Apportionment of Losses Against Aggregate Limits:** All sums which the Company pays on behalf of a Coverage B. Insured and one or more Coverage A. Insureds as the result of a Claim or as the result of a notice given to the Company pursuant to Section Claims B., Discovery Clause, shall be apportioned against the Coverage B. Limit of Liability and the Coverage A. Limit of Liability and the respective apportioned amounts shall thereby reduce: (1) the aggregate limit of liability applicable under Coverage B.; and (2) the aggregate limit of liability applicable under Coverage A. Nothing stated herein shall operate to increase any limit of liability of the Company as stated in the Declarations. Such sums shall be apportioned among the Insureds under this Coverage Part as follows:

INTERLINE

1.  In the event notice is given to the Company pursuant to the Section Claims B., Discovery Clause, or if a Claim is settled or withdrawn prior to judgment, award or verdict, or if a judgment, award or verdict is rendered generally and without regard to the relative culpability of those against whom it is rendered, the Damages and Claim Expenses shall be apportioned, in equal shares against:

    a.  the remaining aggregate limit of liability available under Coverage B.; and

    b.  the remaining aggregate limit of liability available under Coverage A. to each Coverage A. Insured against whom such Claim has been made individually, until each applicable aggregate limit of liability has been exhausted.

2.  In the event that subparagraph 1. does not apply and judgment, award or verdict is rendered, the Damages and Claim Expenses shall be apportioned, in such shares as those shares relate to the judgment, award or verdict in the manner of its rendition as to each Insured against:

    a.  the remaining aggregate limit of liability available under Coverage B.; and

    b.  the remaining aggregate limit of liability available under Coverage A. to each Coverage A. Insured against whom such judgment, award or verdict has been rendered individually, until each applicable aggregate limit of liability has been exhausted.

I.  **Multiple Insureds, Claims and Claimants:**

1.  The inclusion herein of more than one Insured in any Claims or suits or the making of Claims or bringing of suit by more than one person or organization shall not operate to increase the Limits of Liability stated in the Declarations. More than one Claim arising out of a single Malpractice, Professional Healthcare Service or Professional Personal Injury or a series of related Malpractices, Professional Healthcare Services or Professional Personal Injuries shall be considered a single Claim. All such Claims, whenever made, shall be deemed to be first made on the date on which the earliest Claim arising out of such Malpractice, Professional Healthcare Services or Professional Personal Injury is made or with regard to notice given to and accepted by the Company pursuant to Section Claims B., Discovery Clause, on the date within the Policy Period on which such notice of potential Claim is first received by the Company.

2.  Subject to Sections Limits of Liability A., B., C., D., E. and F. above, and regardless of the number of Claims made, or the number of claimants or the number of Insureds hereunder, more than one Claim made during the Policy Period, including any Extended Reporting Period, if exercised, against any one Insured arising out of injuries sustained by any one patient as a result of Malpractice, Professional Healthcare Services or Professional Personal Injury shall constitute a single Claim and the liability of the Company shall not exceed the amount stated in the Declarations.

3.  Subject to Sections Limits of Liability A., B., C., D., E. and F. above, and regardless of the number of Claims made, or the number of claimants or the number of Insureds hereunder, one or more Claims first made during the Policy Period, including any Extended Reporting Period, if exercised, against two or more Insureds arising out of injuries sustained by one patient as a result of Malpractice, Professional Healthcare Services or Professional Personal Injury shall constitute a single Claim and the liability of the Company shall not exceed the amount stated in the Declarations.

4.  In the event that a Claim is first made during the Policy Period, including any Extended Reporting Period, if exercised, against an individual in both capacities as described in Coverage A. and Coverage B., a single limit of liability shall apply and, in the event that the Coverage A. and Coverage B. Each Claim Limits of Liability are not of equal amounts, that limit of liability shall be the greater of the amounts stated in the Coverage A. Limit of Liability as applicable to Each Claim or the Coverage B. Limit of Liability as applicable to Each Claim.

# DEFENSE, SETTLEMENTS AND CLAIM EXPENSES

A.  **Defense, Investigation and Settlement of Claims:**  The Company shall have the right and duty to defend and investigate any Claim to which coverage under this policy applies pursuant to the following provisions:

1.  Claim Expenses incurred in defending and investigating such Claim shall be a part of and shall not be in addition to the applicable Limits of Liability stated in the Declarations. Such Claim Expenses shall reduce the Limits of Liability and shall be applied against the Deductible. The Company shall have no obligation to pay any Damages

or to defend or continue to defend any Claim or to pay Claim Expenses after the applicable Limits of Liability stated in the Declarations have been exhausted by payment(s) of Damages and/or Claim Expenses.

**2.** The Company shall select defense counsel; provided, however, that if the law of the state of the Insured's domicile, stated in Item 2. of the Declarations, allows the Insured to control the selection of defense counsel where a conflict of interest has arisen between the Insured and the Company, the Company will provide a list of attorneys or law firms from which the Insured may designate defense counsel who shall act solely in the interest of the Insured, and the Insured shall direct such defense counsel to cooperate with the Company. Such cooperation shall include:

**a.** providing on a regular basis, but not less frequently than every three (3) months, written reports on claimed Damages, potential liability, progress of any litigation, any settlement demands, or any investigation developments that materially affect the Claim;

**b.** providing any other reasonable information requested;

**c.** providing fully itemized billing on a periodic basis; and

**d.** cooperating with the Company and the Insured in resolving any discrepancies;

and the fees and costs incurred by such defense counsel, including those fees and costs generated by cooperation with the Company, as stated above, shall be included in Claim Expenses. Such Claim Expenses shall be a part of and shall not be in addition to the applicable Limits of Liability stated in the Declarations. Such Claim Expenses shall reduce the Limits of Liability and shall be applied against the Deductible.

**B.** **Consent to Settlement:** The Company shall not settle any Claim without the consent of the Coverage B. Named Insured. If the Insured is a professional association, corporation, partnership or limited liability company, the written consent of an Insured who was formerly but is no longer a member, stockholder, or partner of the Coverage B. Named Insured will not be required, provided the written consent of the first Coverage B. Named Insured stated in Item 1. of the Declarations has been obtained. If, however, the Insured shall refuse to consent to any settlement recommended by the Company and shall elect to contest the Claim or continue any legal proceedings in connection with such Claim, then the Company's liability for the Claim shall not exceed the amount for which the Claim could have been so settled including Claim Expenses incurred up to the date of such refusal. Such amounts are subject to the provisions of Section Limits of Liability.

## CLAIMS

**A.** **Claim Reporting Provision:** It is a condition precedent to coverage afforded by this Coverage Part that the Insured shall give to the Company written notice as stated in the Notices item of the Declarations as soon as practicable of any Claim first made against the Insured during the Policy Period or the Extended Reporting Period, if exercised.

In the event suit is brought against the Insured, the Insured shall immediately forward to Markel Service, Incorporated, on behalf of the Company, every demand, notice, summons or other process received by him/her or by his/her representatives.

**B.** **Discovery Clause:** If during the Policy Period, the Insured first becomes aware of a specific Malpractice, Professional Healthcare Services or Professional Personal Injury which is reasonably expected to result in a Claim within the scope of coverage of this policy, then the Insured may provide written notice as stated in the Declarations to the Company containing the information listed below. If such written notice is received by the Company during the Policy Period, then any Claim subsequently made against the Insured arising out of such Malpractice, Professional Healthcare Services or Professional Personal Injury shall be deemed for the purpose of this insurance to have been first made on the date on which such written notice is received by the Company.

It is a condition precedent to the coverage afforded by this Discovery Clause that written notice be given to the Company containing the following information:

**1.** the description of the specific Malpractice, Professional Healthcare Services or Professional Personal Injury;

**2.** the date on which such Malpractice, Professional Healthcare Services or Professional Personal Injury took place;

**3.** the injury or damage which has or may result from such Malpractice, Professional Healthcare Services or Professional Personal Injury;

**INTERLINE**

4. the identity of any injured persons; and

5. the circumstances by which the Insured first became aware of such Malpractice, Professional Healthcare Services or Professional Personal Injury.

Subject to the paragraph hereinabove, if during the Policy Period the Insured provides such written notice of a specific Malpractice, Professional Healthcare Services or Professional Personal Injury which is reasonably expected to result in a Claim within the scope of coverage of this policy, the Company at its sole option, may investigate such specific Malpractice, Professional Healthcare Services or Professional Personal Injury. Such matter shall be subject to all terms, conditions and provisions in this policy as applicable to a Claim.

## EXTENDED REPORTING PERIOD

A. In the event of the termination of this insurance by reason of nonrenewal or cancellation by the Coverage B. Named Insured authorized to act on behalf of all Insureds or if the Company shall cancel coverage or terminate it by refusing to renew, for reasons other than the nonpayment of premium and/or deductible or non-compliance with the terms and conditions of this policy, then the Coverage B. Named Insured authorized to act on behalf of all Insureds shall have the right upon payment of an additional premium calculated at the percentage stated in the Declarations of the annual premium for the Policy Period to extend the coverage granted under this policy for the period of months stated in the Declarations, as elected by the Coverage B. Named Insured, to apply to Claims first made against the Insured during the period of months as elected, and reported to the Company pursuant to Section Claims A., Claim Reporting Provision, following immediately upon the effective date of such cancellation or nonrenewal, for any Malpractice, Professional Healthcare Services or Professional Personal Injury committed on or after the applicable Retroactive Date stated in the Declarations and prior to the effective date of such cancellation or nonrenewal and which is otherwise covered by this policy. This extended period of coverage as elected by the Coverage B Named Insured and described in this paragraph shall be referred to in this policy as the Extended Reporting Period.

If however, this insurance is succeeded within thirty (30) days by claims made insurance coverage on which the applicable Retroactive Date is the same as or earlier than that stated in the Declarations of this policy, the succeeding insurance shall be deemed to be a renewal hereof, and in consequence the Coverage B. Named Insured authorized to act on behalf of all Insureds shall have no right to secure an Extended Reporting Period.

The quotation of a different premium and/or deductible and/or limit of liability for renewal does not constitute a cancellation or refusal to renew for the purpose of this provision.

This Extended Reporting Period shall not be available when any Insured's license or right to practice his/her profession is revoked, suspended or surrendered.

B. As a condition precedent to the Coverage B. Named Insured's right to purchase the Extended Reporting Period, the Coverage B. Named Insured authorized to act on behalf of all Insureds must have paid:

1. all Deductibles when due;

2. all premiums due for the Policy Period; and

3. all premium and deductible(s), if any, due on any other policy(ies) issued by the Company or any of its affiliated companies in an uninterrupted series of policies for which this policy is a renewal or replacement.

The right to purchase the Extended Reporting Period shall terminate unless a written request for the Extended Reporting Period is received by the Company within thirty (30) days after the effective date of cancellation or nonrenewal together with full payment for the Extended Reporting Period. If such written request and premium payment for the Extended Reporting Period are not so received by the Company, there shall be no right to purchase the Extended Reporting Period at a later date.

C. In the event of the purchase of the Extended Reporting Period the entire premium therefor shall be fully earned at its commencement.

D. The Extended Reporting Period shall not in any way increase the Limits of Liability stated in the Declarations.